Our next case on the call of the docket is Agenda 8, Case 115-106, People of the State of Illinois ex rel. Department of Labor Appellant v. E.R.H. Enterprises, Inc. Appellee, counsel for the appellant, please proceed. Thank you, Mr. Chief Justice, and may it please the Court. My name is John Schmidt. I'm an Assistant Attorney General, and I represent the people of the State of Illinois ex rel. the Illinois Department of Labor. This case arose from a prevailing Wage Act investigation that the Department was seeking to conduct against E.R.H. Enterprises. The Department subpoenaed E.R.H. for records relating to payment of its workers for water main repairs, and that would include canceled checks, the names of the workers, also the names of E.R.H.'s subcontractors. E.R.H. resisted the subpoena and asked that it be quashed, and it raised several different grounds. The most important ones for these purposes, the most important ground for our purposes, of course, is E.R.H.'s claim that it is a public utility company, and that's because under Section 2 of the Public Utilities Act, the Act is inapplicable to work that's done directly by a public utility company. The Circuit Court rejected the claim that E.R.H. is a public utility company, finding that its agreement with the Village of Amman to help operate and maintain its water system did not transform E.R.H. into a public utility company, and instead E.R.H. remained a private outside contractor that was assisting the Village in providing the service. They are obligated to provide water services to all of the Village residents. Is that true? The Village is, Your Honor, yes. E.R.H. is. From that contract, aren't they obligated to provide services to all of the residents? Well, yes, they are certainly obligated to assist the Village in doing that, yes. And wouldn't that indicate that operating the facility is for public use? I think not under this Court's decision in the Mississippi River fuel case, and the reason for that is this Court defined public use in a manner that the company would have to be holding itself out to the public as the one providing the service. And here it's the Village itself that is really providing the water service. There's no question E.R.H. does some very significant tasks in helping the Village to undertake that service, but it is not holding itself out as the one that's providing the service. And one thing that I think E.R.H. is able to walk away from this contract after five years. If E.R.H. is a public utility, it can't just walk away. We've mentioned in our brief the Illinois Commerce Commission would have to approve any desire by E.R.H. to stop performing the service. I think it's also important to look at Section 3105B of the Public Utilities Act. This is the facilities here are owned by the municipality itself. They're also operated by E.R.H. Not all the facilities, but some of them are operated by E.R.H. The Village does maintain some important responsibilities. They maintain and operate the water tower. And the Village is responsible for repairs of pipe that are over 20 feet long, among other things. But under Section 3105, if the facility is municipally owned, even if it's operated by an operating agency, it's taken outside the definition of public utility. And the Springfield Gas and Electric case that we cited in our brief discusses some of the reasons for that. For one thing, the Springfield Gas case says that really one of the central purposes of regulating public utilities involves a desire to regulate the rates that are charged to the public. But when a municipality is the one that's charging the rate, the municipality itself is accountable to voters, to its own residents. And also, part of the purpose of the Public Utilities Act is to get records and reports from the company that's providing the utility. They have to file annual reports, schedules of rates, and so forth. And then those become available to the public. You don't have that need with the municipality itself owning the facility. The municipality's records would be accessible to the public. And so 30105B, even if ERH met the initial definition of public utility in Section 3105A, and we don't think they do because, again, they do not hold themselves out to the public as providing the service. They are merely assisting in providing it. So they do not meet the public use requirement in 3105A. But, Mr. Schmidt, don't they provide the water to every residence? Well, they do, but I think we would frame it as they help the village in meeting the village's obligation to do that. And we don't dispute that. But even if they met that definition, 3105B would take this situation out of being a public utility for the reasons that we've mentioned. And another, I think, problem that this would cause if this was recognized as a public utility, because this is municipally owned, it's governed by a different statutory framework than the Public Utilities Act. It's governed by certain Water Works provisions that are in the municipal code. They're found at 65 ILCS 5-11-129-1 at SEC. And those provisions could conflict with the Public Utilities Act. Those provisions, for example, they are concerned largely with making sure that if a Water Works system is financed through bonds, that enough revenue is generated to pay off those bonds and also to have the system operate adequately. And the Public Utilities Act sort of points in a different direction. The Public Utilities Act is more concerned with keeping rates down for the sake of consumers as opposed to the Water Works provisions making sure that there's enough revenue. The Prevailing Wage Act doesn't define public utilities, is that right? That's absolutely correct, Your Honor. And so public utilities are defined different ways in a number of statutes, aren't they, in Illinois, in different contexts? I'm not familiar with that, Your Honor. I'm not really. So the Act doesn't expressly incorporate the definition from the Public Utilities Act. So why, I guess, why should we do that or should we not do that? I think at least the Court might want to look to the Public Utilities Act for guidance and to the case law defining what a public utility is just simply because it is out there. And it was out there at the time that the Prevailing Wage Act was adopted, which was back in 1941. The Public Utilities Act had been in existence for 28 years. So the legislature in 1941 would have understood that there was a definition of public utility in the Public Utilities Act. But to the extent that this public utility company exemption is in the Prevailing Wage Act, I would suggest that perhaps that would mean it should be construed, the exception should be construed more narrowly because the Prevailing Wage Act is remedial legislation that should be given a more liberal construction by the Court. Mr. Schmidt, don't we have to look to the conduct of the parties? And isn't it the welfare of the entire community dependent on the proper conduct of ERH in maintaining and operating the water? So, I mean, the village is probably, and I'm speculating, intimately involved in making sure they're doing that. So they're working hand in hand constantly. So a third party looking at that looks like they're one and the same, no? Your Honor, there's absolutely a significant public benefit derived from ERH's services. I think there's no question that that's correct. But I think the fact that there's a public benefit is not quite enough under this Court's precedent. Again, the Mississippi River fuel case, I think, takes that a step farther. And under that decision, you have to be holding yourself out as the one that actually is committing yourself to provide the service. In that case, the Mississippi River fuel company was undoubtedly providing a significant public benefit by selling natural gas to a couple of public utilities that then resold it to consumers. That wasn't quite enough to make them a public utility, though. I think here where ERH's role by contract is to assist the village, and I think the first line of the contract recognizes that it's the village's responsibility to operate and maintain that water system. It's their primary responsibility. And that remains. Even though they are delegating some important parts of that to ERH, I think it remains the village's responsibility. And the village, again, the village is the one that's billing the customers and that's receiving payment from them. Mr. Schmidt, you seem to be suggesting that since there is no definition of public utility in the Prevailing Wage Act, we should look to the Public Utility Act, and A, it might come within the definition, but you say B takes it out. If we don't look to the Public Utility Act, could we not, just as the appellate court did, follow the definition that's contained in Black's Law Dictionary, which has no exception? I think the definition in Black's is relevant, but again, I would point out that the legislature would have been aware when it passed the Prevailing Wage Act that there was a longstanding definition of public utility in the Public Utilities Act. And the wording would have been different back in 1941, but I think the Springfield Gas and Electric case indicates that this exception, where municipal corporation for municipally owned utilities that takes them outside the definition of public utility, that did exist back then. That's a longstanding exception. So I think that should be taken into account as well, Your Honor. And also, it seems to make sense that you might exclude entities from the requirements of the Prevailing Wage Act if their rates are subject, if they are public utilities, and their rates are subject to regulation by the Illinois Commerce Commission, because then you have two agencies regulating them and pulling sort of in different directions. The Prevailing Wage Act saying you must keep wages higher, and the Public Utilities Act saying you must keep your rates lower. But you don't have that situation here, because the rates that PEMENT is charging to its water customers are not regulated by the ICC. In fact, the regulation would be in these Water Works provisions, and that regulation is designed, if anything, to keep the rates high enough that the system will keep operating and any revenue bonds issued to pay the system will be paid off. So again, we agree that ERH does the services it performs do confer a public benefit. Justice Burke, that's absolutely correct. But under this Court's prior holdings, and especially Mississippi River Fuel Corporation, we submit that's not enough to meet the public use requirement, which is now embodied in Section 3105A, that it would have to go a step beyond that. The company would have to be holding itself out as actually providing the service. And even if ERH did fall within 3105A, 3105B would take them out. And that sort of interpretation of the scheme makes sense, because it would not create a confusing situation where both the Public Utilities Act and these Water Works provisions of the Municipal Code might apply. And I would also point out there are some other defenses that ERH raises that the Appellate Court didn't deal with because of its determination that ERH was a public utility. If this Court agrees with us that ERH is not a public utility, this Court could merely remand to the Appellate Court to deal with those defenses. I don't think I really have time to go into those defenses now, but perhaps if Commissioner Cox brings them up, then I could chat about them on rebuttal. It would be clear in my mind if the village were doing all that ERH is doing, they would be subject to the prevailing wage act. No, it would not, Your Honor. Government entities themselves are never subject. Even whether it's a public utility or not. That's correct, Your Honor. The municipalities used to be subject to the prevailing wage act, but this Court, I believe, in 1960 held it was unconstitutional to subject government entities, public bodies, to the prevailing wage act. Thank you, Your Honors. David, please, to the Court. I do want to say, as a preliminary matter, this is my first appearance with the Illinois Supreme Court, and I just want to say that to be here along with Mr. Schmidt is a tremendous honor and to be a part of the system. Mr. Chief Justice, there are huge areas in the law here. Let me just, if you could back up and state your name for the record, please. Yes, David Cox. Yes, I represent ERH Enterprises. Thank you, Mr. Cox. ERH Enterprises is a private company that operates water and sewerage systems for 20 different municipalities in central Illinois. As I was about to mention, there are huge areas in which we are in agreement with the Department of Labor, as we've established with the follow-up question a moment ago. If this were the village that would be operating its own system that it owns, the prevailing wage act would not apply because it's government employees. If this were a modification or construction of a new plant or this were a serious extension of the existing plant, then I think we agree with the Department of Labor that that would be public works. It wouldn't be operating and maintaining the old system, and the prevailing wage act would apply. So one of the important things that this court will ultimately consider is that you want to adopt an interpretation that doesn't diminish the legislative intent with the prevailing wage act. On that issue, Mr. Cox, of legislative intent, and I don't know that this is dispositive, but can you give us a reason why the public exception to the wage act would be meant to apply to someone like Defendant that really contracts with and provides services not to the public, but to municipalities? Well, I would argue here that, as a matter of fact, there is no distinction in this case. What you do not see in the record from the Department of Labor that cannot exist in the record is that there's an independent staff. I mean, the implication of the Department's arguments is that BeMent has this staff that does public works and runs the plants, and he or she assists them in that way. That's not in the record because it's not the case. BeMent is a village of 1,800 people. It has a mayor, six trustees, and a part-time secretary. There is nobody to operate the plant. That's why they hire a contractor. They don't have the employees, they don't have the expertise, and they don't necessarily have access to the expertise because people who run water plants and sewerage treatment plants have to have certifications and be approved by Illinois EPA. So in this particular case, you can see a very extensive contract with 25 paragraphs of responsibility for ERH in terms of running this plant and delivering the process, maintaining, delivering water in this particular case to the residents of BeMent. If ERH does not handle that process in its entirety, then it doesn't get done. There is no village employee or village setup or village organization to default to. So that's why we argue that it fits clearly within the public utilities exception. I'd like you to consider the following scenario. It's an older town, as so many smaller towns are, and that's an important policy consideration here because if we're talking about applying the Prevailing Wage Act and changing the structure of rates and salaries and wages and O&M operations and maintenance for Chicago, which of course is on its very own scale, or Rockford or Rock Island or Danville or Springfield or other significant towns, then there are thousands of customers as a matter of policy that this impact may be able to absorb. When you're dealing with the hundreds of small towns that are probably in the exact same position that BeMent is with no independent staff, and you have 500 customers, then this Court's ultimate decision in terms of the interpretation of the Prevailing Wage Act and the Public Utilities Act will have a very serious impact on whether an older population, often an impoverished population in smaller towns, will be able to bear the cost of the service. Cities that have bond issues, as this Court knows, have to charge sufficient rates to cover the debt retirement as well as the operation and current maintenance of the plant. So there's a huge policy implication in terms of what will happen with a small number of customers if the Prevailing Wage Act were to apply. I concur with Mr. Schmidt. This is a statutory construction problem, and it's de novo review, and this Court has established very specific hierarchy for interpreting statutes, giving clear meaning when possible to the legislative intent, trying to determine the plain and ordinary meaning from the language directly, and trying to give, not using extrinsic sources unless you're called upon to do so or you can't ascertain the clear meaning. I want to get at some of the specific questions that have been asked along the way, and we'll quickly do so. But if we look at the hierarchy of the arguments that I believe at least the framework of which the Attorney General agrees with, you start with the Prevailing Wage Act, which we have all established by now,  many of which we've mentioned, but it doesn't apply in situations in which work is done directly by a public utility company. And as we've established through some of the questions for the Attorney General, we have a situation where the question Justice Garmon asked is, of course, directly on point. Why do we go to the Public Utilities Act as opposed to something else? We know that there is concurrent authority between the Illinois Commerce Commission and Illinois EPA, which is a late-coming organization, as governmental organizations go, having been established in 1970, and governs water and sewage treatment plants, but does not offer that kind of a definition. I would argue, Justice Garmon, the reason we choose the Public Utilities Act, and I know it's not a sufficient argument to indicate that both counsel have used that framework, and of course the Fourth District, when they concluded that the RH was a public utility, applied the Public Utilities Act, but of course this Court can draw from other places. But if you look at the Public Utilities Act specifically, and I know you don't want extensive quoting, but I'll be extremely brief, to quote the statute, public utility means every corporation, and I'm just reading the highlighted language here, who operates or manages within this state, directly or indirectly, for public use, any plant used for, and it states specifically in paragraph A-1, the delivery of water, and it states specifically in paragraph A-2, the disposal of sewage. Well in this case we're dealing with the delivery of water. If this Court were to adopt another statutory source for interpreting public utility, first of all it seems to me like the Public Utilities Act draws us to this given the subject matter by specifically mentioning water and sewerage treatment plants, but the problem this Court would ultimately have is reading another version or another definition or applying another definition of public utility and not disqualifying or negating the legislative intent clearly in the Public Utilities Act. So that's the crux of our argument. One justice asked the question about Black's Law Dictionary and Merriam-Webster's College Dictionary. These were two sources cited by the Fourth District as backups indicating that the definition seems to apply to ERH. So that's the framework of the argument. That seems to be the framework the Attorney General and ERH have been following. Now I want to get back to some of the early questions here because even the Fourth District decided they couldn't ascertain the plain language, they couldn't ascertain just by reading the Public Utilities Act whether ERH qualified as a public utility. They felt they had to go further in their analysis. Members, while you're here under this Act, address Section B and what that means or why it does not take it out. Yeah, and I must say, to be diplomatic, I certainly am not a fan of the Attorney General's view of this paragraph and I don't agree with it, and here's why. And I assume that's where the Attorney General is asserting that the exception that takes us out of Public Use and Public Utilities Act specifically mentions in 3105B that public utility does not include utilities that are owned by a municipal corporation. But when I read just a moment ago from the Public Utilities Act, it specifically said earlier in the section, sir, that public utility means every corporation and company. So the reason that 3105B does not apply to this case very clearly is that to accept the Attorney General's argument, you have to shift from being in A and talking about public utility companies to B now means we're talking about the pipes and the plant and the physical structure in BMET. There is no dispute and no question. The village of BMET owns the pipes, the water wells, the water tower, the water treatment plant, and the delivery system. But I would argue that 3105B does not mean the system itself. We're still talking about the public utility company. And what is also very clearly in the record is ERH is a private corporation. The Attorney General has not attacked that position. ERH is not owned by the village of BMET. So for 3105B to apply, utilities that are owned by a municipal corporation, clearly as we have asserted, BMET does not own ERH, and therefore I would argue, sir, that that provision doesn't apply. Mr. Cox. Yes, sir. My question was essentially the same, but based on your response, my follow-up question would be later on in B1, the second oral clause at the end talks about what's owned by a corporation and operated by a lessee or operating agent. Isn't that exactly your client? Well, I think you have to look at the contract, which is in the record. I believe it's in the Attorney General's brief, and the record cited A23 to 25. If you look at the contract between the village of BMET and ERH Enterprises, there are 25 paragraphs. I think this gets to Justice Freeman's initial question and a couple of Justice Burke's initial questions as well, so maybe I can cover this in one broad swoop. There are 25 paragraphs in this contract. I have already asserted for you that the reason the record is devoid of any evidence that there's an independent village staff dealing with these issues is because no such staff exists. They contract this out entirely. And when you look at the contract provisions, you can see that. ERH is responsible for using its own equipment, making certain types of repair, buying state-of-the-art equipment when necessary to operate and maintain the plant, and that's where I think we start to draw out of the later part of the statute that you're referring to, sir. That ERH, as a matter of fact, owns a great deal of the equipment and the property that is used to service this plant. But getting back at some of the initial questions as well, ERH is responsible for dealing with the public. They are responsible from beginning to end for the entire delivery system for the public. I mean, when the 4th District said that they had to look at some of these other cases that the Attorney General cited like Mississippi River Fuel, People's Energy, Springfield Gas, I know these cases basically say that you have to be using your property for public good, there has to be a public service, it has to be on demand and so forth, and all of those things apply to this situation. ERH has to run the water plant, which takes water from the wells and treats it before it goes up in the water tower to be inserted into the water delivery system. ERH has to test the water. ERH has to manage problems. ERH has to effectuate minor repairs, buying their own equipment. They have to deal entirely with the Illinois Environmental Protection Agency in terms of responding to inquiries, providing reports, providing reports to the public. They have to treat the water with chlorine and other sources as you have to under the Illinois Environmental Protection Act and the accompanying regulations. And what's also clear under the contract is this service has to be available to the public without exception. ERH doesn't get to choose. If somebody moves in or they add new construction and they want to tap into the water system, the contract specifically requires ERH to go out and put in the new tap so that a new building or a new business or a new facility can draw water from this plant. ERH doesn't get to choose. If you move in to be met and you want water service, they add it. They turn the water off. Let's talk about the contract for a minute. Mr. Schmidt started his presentation by talking about the contract with ERH is of five years duration. So is the concept of ERH being a public utility based on the job it's performing at the time? I mean, if those five years ERH decides to walk away and just starts doing what they do and it has nothing to do with the type of work they're doing now, I don't think you'd dispute that they're no longer a public utility, right? Right. If ERH had other jobs along the way of this five years that would definitely not be public utility, are they a public utility for one purpose and then not for another purpose? Well, keep in mind that ERH manages these types of facilities for 20 different municipalities. Also keep in mind while based on another fourth district opinion that I was involved in in 1988, the fourth district said you couldn't go beyond the multi-year contracts or the five-year contracts. What actually happens in these types of cases, the court may be able to ascertain on its own research. I realize it's not in the record. But what happens in these types of cases is you see long-term relationships between companies that provide satisfactory service to the public and that these things rarely change. ERH has been involved in Vement, for example, for somewhere in the neighborhood of 27 or 28 years with a series of five-year contracts. Their relationships with other municipalities, which are not before you now, are long-term. So I would argue that by the nature of the fact that they have the expertise, the relationship with EPA and the relationship with the communities and the people on staff to do the testing, the boil orders and everything you have to do associated with it. Are they prohibited from doing any other type of work that would certainly be outside the realm of public utility? They are not prohibited from doing, I assume you're alluding to public works work, for example. And ERH does that in all candor. There are times when ERH is operating a plant, and I'm distinguishing between operation and maintenance and new construction or modification or upgrading a plant that's existed since the Solid Waste Disposal Act authorized funding in 1965. So every 10 or 15 years there may be a significant addition. When I was mayor of Vement, we constructed a new water plant. They replaced one that was constructed in 1952. ERH can do that kind of work because they're already involved and they know the system, although they may contract with other people that do different parts of the construction. And in those cases, Judge, ERH bids and pays prevailing wage act because it's not part of the operation and maintenance of the public utility. It more fits public works. You're going to be a public utility in part. Change the facts a little bit where 90 percent of a company's work is public works and the other 5, 10 percent is what you would classify as a public utility. Are they still classified then as a public utility for purposes of the work they're doing for the municipality? Are they hypothetical? And I think that they are. Public utility, I think the word public utility goes at what your primary function is under Illinois corporate law, what your expertise is, what you primarily do, how you hold yourself out, and then what you're practically doing for these municipalities. It's based on the context, not based on the role of a particular job that makes, in your rationale, it's based on the role of that corporation in a particular job that makes them a public utility. In fact, you indicated even with respect to ERH, they're a public utility over here but not over here. I think they're acting as a public utility when they're operating and maintaining water and sewage treatment plants. And that's what they primarily do. I'm not telling you that if they just did it on a part-time basis or they didn't have this base of expertise or it wasn't their primary function and primary responsibility and their primary history over 20-some years and they've been recognized, you'll see in the record, by the General Assembly for doing so, that maybe one could make the argument that they've slipped into more of a multipurpose corporation and that they don't have the same expertise as a public utility. You wouldn't doubt if they were filling out an application and the question was, is ERH a public utility? Even under the facts, as they relate to ERH, they'd have to say sometimes. Well, I think they would say primarily. I think they would say primarily. Remember, in terms of the contract, that it's ERH that issues boil orders, not the village to be met. It's ERH that's required to operate a 24-hour hotline to respond to customer issues, not the village. It's ERH that has to go out when there's an emergency repair in the middle of winter and there's going to be a problem with whether or not safe water is going to be delivered to the rest of the community in that section. It's ERH that has to respond. It's ERH when somebody wants water turned on or turned off. It's ERH when somebody responds in terms of water quality. It's ERH under the contract that flushes hydrants and warns the public that that's going to happen. If the village water system were operated entirely by the village, would they be a public utility? I suppose they would be a public utility, but they would be exempt from the Prevailing Wage Act because presumably they would be using governmental employees, and they would be exempt based on prior decisions by this court. Finally, a quick word on the ICC, and I believe if I read, Justice Freeman is quite an expert on the ICC because of his history, so I know you have somebody who will be well-versed on this point. The Attorney General has made a big issue out of whether or not the lack of regulation of ERH by the ICC is indicative that they're not a public utility. The Attorney General does concede that it's not an exclusive. It doesn't necessarily mean that they're not one. It's a factor to be considered by the court. And, of course, the ICC predates the Illinois EPA. I would argue that when you're dealing with water and sewage treatment plants, there is an interconnection between the Illinois Environmental Protection Agency's responsibility and the ICC's. For example, these plants run on electrical grids. There's a natural gas generator in many towns that will kick on and run the water plant and the lift stations and the other plants if there's a power failure with traditional sources. I'm not arguing that the ICC isn't responsible for the traditional power grid even as attached to these plants, and if they chose to regulate ERH, that they have the power to do so under their authority to regulate public utilities. My main argument is that with the advent of the environmental era in 1970, the creation of Illinois Environmental Protection, I see my light is on. May I finish briefly? Please conclude. In the advent of the environmental era, Illinois EPA has primary responsibility for approving contractors, approving arrangements, and regulating water and sewage treatment plants so there's at least concurrent authority. Thank you for the opportunity to address these issues. Thank you. Your Honors, I just wanted to address Justice Garmon's last question very briefly because I believe Mr. Cox's answer was incorrect. If this implement owned and operated its entire water system as opposed to it does operate, it has some responsibilities, but if it owned and did everything, it would not be a public utility. Section 3105B of the Public Utilities Act would very clearly take it out of being a public utility, and that has been the situation for a long time under Illinois law. Municipalities cannot be public utilities. And I believe as to Section 3105B, that the Chief Justice correctly pointed out, that 3105B specifically says that a public utility does not include something that would otherwise be a public utility but is owned by a municipal corporation and operated by its lessee or an operating agent. And I think ERH has conceded that it is in the position of an operating agent, so we believe that that exception, that limitation on public utility would definitely apply here. And as I pointed out in my opening, otherwise I think you create an absurd situation where this type of water facility that's owned by a municipality but that is operated in part, or I'll even say in large part, by a private company, it's potentially subject to conflicting regulations or conflicting statutory schemes. The Water Works Provisions of the Municipal Code and then the Public Utilities Act. So I think that would be very problematic, and this Court should avoid an interpretation that would do that. Mr. Cox mentioned the policy issue of possibly subjecting small municipalities to a situation where workers would have to be paid more. Of course, in this situation, it's ERH's workers, it's not their workers. But, you know, in terms of the prevailing wage act, the legislature has tried to draw that balance, and the legislature I think is the one to answer the policy question that he raises. Mr. Cox referred to the fact that some municipalities are not in great financial shape right now, but again, this is ERH's workers that we're talking about, and the legislature has chosen in the prevailing wage act to offer protections to workers like those, not only for their interests, but to help assure better and more expeditious work on public works. So what you're saying is this is a statutory interpretation matter, and equitable considerations should not inform our decision? Yes, I think it is primarily a statutory interpretation matter, and yes, equitable. I mean, certainly the ramifications of deciding one way or another should be taken into account, but I think the policy question that he raised is something that the legislature has taken into account in enacting the prevailing wage act, and this court should bear that in mind as well. And finally, in terms of I think the fact that the ICC really hasn't had any contact with ERH and does not regulate it is very significant. This court's Mississippi River Fuel Corporation decision recognized that as a significant factor, though again, it's not necessarily dispositive, and the fact that ERH had no documents in its possession that would reflect contact with the ICC is very significant. It didn't have a certificate of public convenience, which the ICC issues to public utilities. There was no evidence that it filed annual reports or a schedule of rates, which it would be required to do, or that it paid a tax on its revenues to fund the ICC, as it would also be required to do. And in terms of this situation where Mr. Cox seems to argue that the fact that it's subject to regulation by the Environmental Protection Agency somehow means the ICC is more likely to be hands-off, I think those are separate regulatory schemes, and the fact that ERH is regulated by one would really have no impact on whether it's regulated by the other. So I don't think that's really a valid argument. Again, for the reasons that we've stated in our brief, and here we would submit that ERH is not a public utility company within the meaning of the Public Utilities Act, and ask this court to reverse the appellate court's contrary determination. Thank you. Thank you. Case number 115106, People, the State of Illinois, XREL, the Department of Labor Appellant v. ERH Enterprises, Inc., appellee is taken under advisement as agenda number 8. Mr. Schmidt, Mr. Cox, we thank you for your arguments this morning.